# STATE OF VERMONT

# ENVIRONMENTAL COURT

In re: Appeal of John and          }
Sharon O' Rear, <u>et</u> <u>al.</u>          }
                                   }   Docket No. 2-1-00 Vtec
                                   }
                                   }

## <u>Decision and Order on Threshold Issues</u>

Appellants appealed from the December 7, 1999 decision of the Zoning Board of Adjustment (ZBA) of the Town of Calais regarding the application of Stanley and Janice Morse and Black Rock Coal, Inc. for a conditional use permit. A number of other individuals and the Selectboard of the Town of Calais entered their appearance as interested parties but have not been active participants. Appellants are represented by Gerald R. Tarrant, Esq.; Appellee-Applicant Black Rock Coal, Inc. is represented by George E. Rice, Esq. When the term Appellee-Applicant is used in the singular in this decision, it refers to Appellee-Applicant Black Rock Coal, Inc.

On January 23, 2001, the Court disposed of a related appeal <u>In re Appeal of Himes</u>, 251-11-00 Vtec, regarding the validity of a curb cut permit issued to Appellee-Applicants for the project at issue. The Court ruled that it had no jurisdiction of challenges either to the content of access permits issued under 19 V.S.A. § 1111, or to the authority of the town officials who purport to issue them or to receive them for filing under § II(11) of the Calais Zoning Regulations. The decision suggested that those permits may be appealable, if at all, under V.R.C.P. 74 or 75, including actions in the nature of mandamus or quo warranto as provided in V.R.C.P. 81(b). However, the Court noted that curb cut permits are to be issued by the selectboard, and that § II(11) requires that the zoning administrative officer receive and file the curb cut permit before the zoning permit application may be considered complete. Therefore, the Court advised the parties that in the present appeal (<u>Appeal of O' Rear</u>, Docket No. 2-1-00 Vtec), the Court would have to determine whether the curb cut permit is valid in order to determine if the conditional use application is complete, as well as considering the adequacy of the sight distances along County Road under the conditional use standards.

The Court ruled on February 22, 2001 in the present case on various summary judgment motions and motions to dismiss the underlying application. Appellants had moved to dismiss the application before the Court on appeal, arguing that the application was not complete for lack of a validly-issued curb cut permit. Because the curb cut permit had not been issued by the selectboard as required by Section II(11)of the Calais Zoning Ordinance and by 19 V.S.A. § 1111, the Court ruled that therefore the application was not complete. However, noting that the matter is <u>de</u> <u>novo</u> before the Environmental Court, in the February 22, 2001 decision denying the motion to dismiss, the Court specifically advised the parties that Appellee-Applicants would have to demonstrate that the application is complete as of the hearing on the merits in Environmental Court.

On one of the summary judgment issues, the Court ruled in the February 22, 2001 decision that the literal text of the permit authorized Appellee-Applicants only to extract up to 8,000 cubic yards of slate and granite in total, and not to extract that amount each year. However, the Court suggested that Appellee-Applicants might wish to move the ZBA for clarification or amendment of the permit on that issue. On March 5, 2001, the Court granted Appellee-Applicant's request for a partial remand to allow it to apply to the ZBA for clarification of or amendment of the decision on appeal[1], to determine whether the permit allowed or intended to allow the extraction of the designated amount in total, or on an annual basis. The Court retained jurisdiction of the remainder of the matter, and began the hearing on the merits of the threshold issues.

The parties agreed that the trial would proceed first with the presentation of evidence on the preliminary or threshold matters of whether the proposal fits into a use category or categories entitled to apply for a permit in the Rural Residential zoning district, and whether the status of the curb cut permit precludes the Court from proceeding with the remainder of the merits of the permit application. Evidence was taken on the threshold issues on March 19 and 20, and the parties presented oral argument. At the hearing, Appellee-Applicant proposed to incorporate the conditions of the permit as issued by the ZBA into its application before this Court. Accordingly, the proposals stated below differ from those made in the application to the extent that the conditions of the ZBA permit were more limited or specific than those stated in the application.

Appellee-Applicant has applied for conditional use approval[2] to conduct " extraction of wall stone and crushed stone" on ten acres of a 45-acre parcel of property to be purchased from Stanley and Janice Morse. The property is located in the Rural Residential zoning district, and lies behind and to the east of the lots fronting on the County Road. The access road from the working site of the project is proposed to extend to the County Road over a right-of-way over the land of Sandra Guerrette. Although an existing curb cut is located on the land of Sandra Guerette, Appellee-Applicant proposes to establish a new curb cut somewhat southerly of the existing one.

Appellee-Applicant proposes to extract approximately 8,000 cubic yards of rock material annually from 10 acres, with the remaining 35 acres to be kept in forest management use. Appellee-Applicant proposes to extract slate from three ridges of material as shown on the plan, and to extract a smaller quantity of granite from a vein of granite located farther to the east on the property and shown on the plan. The ten acres of extraction site in those two areas is at present forested and will be clear cut. The topsoil will be stockpiled, protected with a silt fence and seeded, and will be stored until used for reclamation of the site at the end of the extraction period.

Appellants first argue that the project does not propose the extraction of soil, sand, gravel or minerals, and therefore does not fit within the conditional use category in § IV(2)(C)(7). From the point of view of dividing materials into the animal, vegetable or mineral categories familiar from childhood games of " Twenty Questions," slate and granite are both minerals. From the point of view of the 1997 Calais Town Plan' s discussion of the natural resources of the Town, listed and discussed at p. 23 as the " plant, animal, aquatic, mineral and scenic resources" of the Town, slate and granite are mineral resources. Slate and granite are both rocks, but they are both classified as rocks which are not "minerals" from a specialized geologist' s point of view, as they

are composed of mixtures of minerals in varying proportions, rather than a specific mineral compound or element.

There is no indication, either from the text of the Zoning Regulations or from either of the town plans, that the Regulations intended to incorporate the specialized geological meaning of the term ' minerals' to distinguish them from ' rocks.' Under standard rules of statutory construction we apply the common meaning of an undefined term. This interpretation is also consistent with the use of the term ' minerals' or ' mineral resources' in the town plans that the term signifies mineral resources, inclusive of rocks and minerals, and distinguished from already-loose deposits of soil, sand or gravel.

Of the 8,000 cubic yards of rock to be extracted annually, approximately half will be wall stone to be trucked off site, and the other half will be tailings, which are proposed to be crushed on site not more than once per year for three consecutive weeks each year, with the crushed stone offered first to the Town of Calais for road maintenance use, or sold to other customers. Appellee-Applicant proposes to operate the facility from May 1 through November 30, from 8:00 a.m. to 5:00 p.m. Monday through Friday, with blasting to occur only between 10:00 a.m and noon on Monday through Friday, unless necessary to clear a misfire or other safety emergency. Appellee-Applicant proposes to make no more than four truck trips onto the property and four leaving the property in any day, not including the Town of Calais trucks that may come onto the site to pick up crushed stone for road work. All trucks leaving the site are proposed to turn left or south down the County Road towards Montpelier, except for the Town of Calais trucks which may turn to the right for use of the crushed stone at other locations within the town.

The proposed work may be considered in several components. The first is drilling and blasting. Blasting is used to loosen the rock from the ground and may be used to break large slabs of stone into smaller sizes. It will be done by a contractor, and each session of blasting will be complete before the large excavator will come onto the property. Appellee-Applicant proposes a maximum of three weeks of blasting annually.

The second component of the proposal is to peel the slabs of rock from the rock face with the large excavator. Appellee-Applicant proposes that the use of the large excavator will take place for a maximum of three weeks annually[3]. Most probably those weeks will not be consecutive, but will occur on one week in the spring, one week in the summer, and one week in the fall to prepare for work the following spring. The large excavator will be leased and brought onto the property for those periods, with an operator and maintenance and fueling services to be provided by the leasing company. As well as being used to peel slabs of stone from the rock face, the large excavator may be used to break large slabs of stone into sizes below 13½ feet in length and 4 feet in width, which is the capacity of Appellee-Applicant' s trucks.

The next component of the proposal is to load the wall stone onto trucks for transportation off site to customers, or to move it away from the rock face into piles on the 3-acre flat working area of the site. Those piles could be sorted roughly by size or shape. Other piles would be made of the tailings (rocks too small to be used as wall stone) to accumulate enough to warrant the crusher' s being brought to the site. Appellee-Applicant would keep a small excavator (leased

each season) and a front end loader (owned by Appellee-Applicant) on the site to move the stone to the piles or load it onto the trucks.

Once approximately 8000 cubic yards of tailings have accumulated, the next component of the proposal is for the owner of the crusher and screening machinery to bring the machinery to the site for no more than three consecutive weeks in a year, to crush the tailings into useable crushed stone. Appellee-Applicant proposes, depending on demand, to have the tailings crushed into five sizes of stone, ranging from ½ -inch to six inches in size, suitable for different uses. Those five grades or sizes of stone would be stored in piles until trucked off the site.

The remaining component of the proposal is the truck transportation to transport the wall stone and the crushed stone off site. Appellee-Applicant does not propose to have any customers' trucks come onto the site, except the Town trucks. Appellee-Applicant proposes to use a large " Freightliner" truck, with an 18-yard body. It has a 60,000 pound maximum allowable road weight. Appellee-Applicant also has two 30-foot-long " pup" trailers which can be attached to the Freightliner. The combined length of the truck and trailer combination is 62 feet, and the maximum weight is 80,000 pounds.

Appellee-Applicant claims that all components of its proposal come within category § IV(2)(C)(7) of the conditional uses in the Rural Residential zoning district, covering " extraction of . . . minerals." In the alternative, they argue that any component of their proposal that does not fall within that category is allowed as a conditional use either as accessory to the " extraction" use, or is allowed as a conditional use under § IV(2)(C)(11), as an " other use or land development not specifically described above, but deemed consistent with the purposes of this district by the Board of Adjustment" (and hence this Court in the de novo appeal).

We must note that, unlike the regulations of some other towns, the Calais Zoning Regulations do not define " accessory uses" as a separate category of conditional or permitted use, except in connection with the category of one- and two-family residences. Thus, an applicant may apply to build a garage or a shed as accessory to a home. But there is no provision to consider any aspect of Appellee-Applicant' s proposal as ' accessory' to the proposed extraction activities. We also note that, again unlike the regulations of some other towns, the ' other use' category in § IV(2)(C)(11) does not speak in terms of other uses similar to the listed conditional uses, but rather calls for ' compatibility' with the ' purposes' of the zoning district in which it lies.

The term " extraction (excavation)" is defined as " removal or recovery by any means whatsoever of soil, rock, mineral substances or organic substances other than vegetation, from water or land on or beneath the surface thereof or beneath the land surface, whether exposed or submerged." By its terms, it covers only the components of Appellee-Applicant' s proposal involved in getting the rock out of the ground and hauling[4] it off the site. Thus, the drilling and blasting, the use of the large excavator to peel rock from the rock face and to break up pieces too large to handle, the use of the small excavator and front end loader to move the wall stone and tailings into piles, and the use of the trucks to haul the wall stone and the tailings off site all fall within the definition of excavation. Accordingly, Appellee-Applicant may apply for conditional use approval for those components of its proposal, and we will schedule the hearing on the merits of that application.

Any further work proposed to be done on either the wall stone or the tailings on the site would not fall within the use category of ' extraction.' Appellee-Applicant does not propose to do any further work on the wall stone on site, but does propose to have a contractor come on site with crushing and screening machinery to crush the tailings into various useable sizes of crushed stone during a period of up to three consecutive weeks a year, to store the graded crushed stone on site, and to transport the stone to customers and allow Town trucks to come in to collect the graded crushed stone for use on Town roads. The piles of graded crushed stone would occupy a substantial part of the flat working area of the site, but we cannot find from the volumetric evidence presented that it would necessarily exceed the physical capability of the land to store piles of crushed stone.

Appellee-Applicant seeks conditional use approval of this component of its proposal in the alternative as an activity consistent with the purposes of the Rural Residential district under § IV(2)(c)(11). The purpose of the Rural Residential District, as stated almost identically in § IV(2)(A) of the Zoning Regulations and at page 19 of the 1983 Town Plan[5] is to provide "for residential and other compatible uses at low-moderate densities appropriate for the physical capability of the land and the preservation of agricultural, scenic and natural resource areas."

The operation of the crushing and screening machinery, although limited to three consecutive weeks each year, would be an industrial type of process not compatible with residential uses. Further, the transportation of the crushed stone would take place during the period from May through November, and also would not be compatible with the purpose of the rural residential district, especially as there is no proposed limitation on the number of Town trucks which could come in on any day to take loads of crushed stone for use on the town roads. Based on the evidence presented, the operation of crushing and screening machinery on the site for up to three weeks a year, plus the storage and transportation of the graded crushed stone, is not " consistent with the purposes of [the Rural Residential] district" under § IV(2)(c)(11), and is therefore not a use for which Appellee-Applicant may seek conditional use approval in this zoning district.

The Court announced the decision on these threshold issues to Attorneys Rice and Tarrant in a telephone conference at 6:00 p.m. on March 20, 2001, and the parties agreed that the trial date scheduled for March 21 should be continued and a scheduling conference should be held instead. The Court requested that the parties come to the conference prepared to state whether they wished any part of the decision on the threshold issues to be entered as a final appealable order under V.R.C.P. 54(b), and whether any part of the hearing on the merits of the conditional use approval could go forward on the March 22 and March 23 scheduled dates, in anticipation of the Selectboard' s later consideration of the curb cut permit.

At the conference held this morning, March 21, 2001, Appellee-Applicant declined to request entry of a final order under V.R.C.P. 54(b) on the issues pertaining to the crusher use category. Appellee-Applicant requested that the hearing on the merits of the conditional use application go forward on March 22 and March 23 as scheduled, subject to the Selectboard' s later action on the curb cut permit (scheduled to be heard on Monday, March 26, 2001). Appellee-Applicant also requested that the Court take evidence on the crusher issues as well as the extraction issues, so that such evidence would not have to be heard at a later date if the Supreme Court were to reverse and remand this decision on the crusher use category. Appellants opposed proceeding

with any hearing on the merits until after the Selectboard ruling on the curb cut permit, as the application cannot be deemed complete until that action has occurred. Appellants also opposed hearing any evidence on the crusher issues, as entirely speculative and advisory under the present law of the case.

The Court ruled that the application could not go forward to the merits hearing until it is complete, that is, if and only if the Selectboard issues the curb cut permit, or if the project proposes use of the existing curb cut. Accordingly, the hearing dates for March 22 and March 23 were canceled. After consultation with the parties, the dates of April 10 (concluding at 3:45), April 13, and April 17 have been reserved for the continuation of the merits hearings. With the parties' agreement, the Court reserved ruling on whether the merits hearing could include evidence related to the use of the crusher, under the present law of the case, to be decided at the next telephone conference in the case, scheduled for noon on Tuesday, March 27, 2001. Judge Wright will be at the Bennington District Court that day, and will call Attorney Rice's office for the conference.

Done at Barre, Vermont, this 21st day of March, 2001.


_____
Merideth Wright
Environmental Judge


**Footnotes**

1.    The ZBA held a hearing and ruled on Appellee-Applicant's request on March 19, 2001, ruling that the permitted amount was on an annual basis. The parties and the Court have not yet addressed how to incorporate any additional appeal from that decision into the present case, but will do so to avoid postponing the merits hearing.

2.    Under §IV(2)(C)(7) or, in the alternative, under §IV(2)(C)(11) of the Zoning Regulations.

3.    As this case proceeds to the merits of the conditional use application we expect that Appellee-Applicant will want to clarify how the 'maximum of three weeks' provision would be allocated between the blasting and the large excavator. That is, to clarify whether each excavation period will consist of up to a week of blasting followed by up to a week of operation of the large excavator, for a possible total of six weeks.

4.    Transporting the rock off the site is part of the 'extraction' use because if the rock were left on the site, the extraction would not be an economic activity or 'use' at all.

5.    In this analysis we need not resolve the parties' arguments about the applicability of the 1997 Town Plan, because the purposes of the district are defined in the Zoning regulations themselves.